# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANARD KITCHENS,<br><br>                Petitioner,<br><br>        v.<br><br>SCOTT FRAUENHEIM,<br><br>                Respondent. | Case No.  1:15-cv-00170-LJO-EPG-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition for writ of habeas corpus, Petitioner Lanard Kitchens raises four claims for relief: (1) that the trial court failed to instruct the jury on the lesser included charge of assault with a deadly weapon other than a firearm; (2) that there was insufficient evidence for the firearm allegations for counts 10, 11, and 12; (3) that he received ineffective assistance of trial counsel because counsel did not prepare for trial, did not object to the trial court's instruction of simple assault as a lesser included offense for count 11, and did not object to the trial court's failure to instruct on the charge of assault with a deadly weapon other than a firearm; and (4) that he received ineffective assistance of appellate counsel because counsel did not raise the arguments on direct appeal that Petitioner raises in this petition.

Respondent argues that Petitioner's first claim for relief does not state a cognizable claim

1

for federal habeas review and that it is procedurally defaulted. Respondent argues that Petitioner's second claim for relief is procedurally defaulted, but nevertheless, Petitioner fails to establish that there was insufficient evidence to support the firearm enhancements. Respondent contends that Petitioner's third and fourth claims must be denied, because Petitioner has not shown that the state court decision on the ineffectiveness claims was contrary to or an unreasonable application of Supreme Court precedent.

The Court recommends denying his petition. Petitioner's arguments all concern his claim that he should not have been convicted of assault with a semi-automatic firearm because he alleges he was actually using a replica gun that could not shoot. He contends that if the jury were given an instruction for assault with a weapon other than a firearm, which he incorrectly labels as lesser-included crime, the jury would have convicted him of that crime instead. There are serious exhaustion issues with this claim that could warrant denial on that basis alone. But even setting exhaustion aside, Petitioner is incorrect. Petitioner's defense at trial was not really that a different firearm was used; rather he contended that his semi-automatic weapon was an inoperable replica. Thus, if the jury believed Petitioner did not have an operable weapon during the incident, they should have not convicted him of even assault with a weapon other than a firearm. The instructions provided to the jury thus presented the appropriate choice if they believed that he did not have an operable weapon. Yet, the jury heard Petitioner's defense at trial and still convicted him of assault with a semi-automatic firearm, at least in part because Petitioner said at the time of the incident that he would shoot the victim, indicating that the weapon could shoot and was not a replica. Furthermore, Petitioner never produced any replica gun at trial. His assertion that he would have done so if he had seen the prosecutor's photographs of the weapon ahead of time is not credible in light of his being on trial for assault with a semi-automatic weapon. His use of a semi-automatic weapon was always at issue, yet Petitioner never produced the so-called replica gun he claims now to have.

In sum, Petitioner pointed what looked like a semi-automatic firearm at the victim and said, "I'll shoot you." The jury found him guilty of assault with a semi-automatic firearm after hearing the evidence. Under the circumstances, the Court does not find that Petitioner's

1   constitutional rights were violated.

2                                              **I.**

3                                       **BACKGROUND**

4          On February 2, 2015, Petitioner filed the instant federal petition for writ of habeas

5   corpus.  Respondent has filed an answer to the petition and Petitioner has filed a traverse.

6          In 2012, Petitioner was convicted in Kings County Superior Court of attempted murder,

7   attempted murder of a peace officer, evading a pursuing peace officer while driving with a

8   willful or wanton disregard for the safety of person and property, driving on a highway in a

9   direction opposite to lawful traffic during flight from a pursuing peace officer, possession of a

10  firearm by a felon, two counts of transporting controlled substances, possession of controlled

11  substances for sale, vandalism, unlawfully and by means of force and fear taking personal

12  property, assault with a semi-automatic firearm, and possession of a firearm by a felon. The jury

13  also found true enhancement allegations of firearm use and great bodily injury.  Petitioner was

14  sentenced to an indeterminate term of 40 years to life in prison, plus a determinate term of 44

15  years eight months.  In the present petition, Petitioner only challenges his conviction for assault

16  with a semi-automatic firearm.

17         On February 20, 2013, Petitioner filed a petition for writ of habeas corpus in the Kings

18  County Superior Court, which was denied on February 27, 2013.  (LD[1] 6).  Petitioner timely

19  filed a notice of appeal.  On January 16, 2014, the California Court of Appeal, Fifth Appellate

20  District, affirmed Petitioner's conviction and sentence.  (LD 3).  On January 28, 2014, Petitioner

21  filed a petition for review in the California Supreme Court.  (LD 4).  On March 28, 2014, the

22  California Supreme Court denied the petition for review.  (LD 5).  On June 30, 2014, Petitioner

23  filed a second petition for writ of habeas corpus in the Kings County Superior Court, which was

24  denied on August 21, 2014.  (LD 7).  On September 11, 2014, Petitioner filed a petition for writ

25  of habeas corpus in the California Court of Appeal, Fifth Appellate District, which was denied

26  on September 24, 2014.  (LD 8, 9).  On October 22, 2014, Petitioner filed a petition for writ of

27

28  _____
    [1] "LD" refers to the documents lodged by Respondent on July 30, 2015.

                                               3

1  habeas corpus in the California Supreme Court, which was denied on January 14, 2015.  (LD 10,

2  11).

## II.

### STATEMENT OF FACTS[2]

On December 31, 2009, Cheryl Gonzales went to the bank and then returned to her furniture store, the Hanford Bargain Center. As Gonzales walked toward the store, a person approached her and started beating her on the head and grabbed the bank bag. Gonzales screamed. She tried to protect herself and covered her head and closed her eyes. She opened her eyes for a brief moment and saw silver as it came down onto her head; she thought it was the butt of a gun. She was hit with something hard that broke her skin. After the fourth blow, she fell to the ground, and the assailant grabbed the bank bag and ran. She did not see the assailant's face, but was able to describe his clothes, height, weight, and race. She went to the hospital for her injuries and received seven staples in three different places.

Loretto Rico was working at the Hanford Bargain Center that day. She noticed Gonzales pull up into the driveway and park her car. Rico had a question for Gonzales, so she started to walk out of the store to talk to Gonzales. As she reached the front door of the store, Rico heard screaming. She saw Gonzales with her hands up, holding a bank bag and trying to protect her head. A man with a gun stood over her and struck her three times; he said "Let it go," as he pulled the bank bag with his other hand. The assailant ran, and Rico ran after him. The assailant turned around and pointed the gun at her. He said something to effect of "I'll shoot you" and called her a bitch. At that point, Rico ducked and stopped chasing the man. No shots were fired during the incident.

Rico saw that the assailant was wearing a coat with a hood and he had a gun that was silver and large. The gun appeared to be a semiautomatic firearm. Rico was familiar with certain firearms because she had taken peace officer training in 2005 and the duty weapon was a semiautomatic handgun. At trial, Rico identified Kitchens as the man who attacked Gonzales.

Jason Verhoeven was working across the street from the Hanford Bargain Center on December 31, 2009. From his office, he heard screaming and then saw a woman struggling with an African–American man. Verhoeven saw that the assailant had a gun, and he called 911. He observed the assailant run west on Sixth Street and jump into the passenger side of a maroon Mercury Capri that was waiting at the corner of Sixth and Brown Street. The car sped away. Verhoeven identified Kitchens as the man he saw that day.

Kayla Brown testified that Kitchens was her boyfriend in December 2009, although they were not in a relationship at the time of trial. On December 31, 2009, she was with Kitchens near the Hanford Bargain Center. She was driving her red Mercury Capri. Brown stopped the car, and Kitchens got out and went

---

[2] The Fifth District Court of Appeal's summary of the facts in the January 16, 2014 opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the state appellate court. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

around the corner. She did not see anything in his hands, but she thought he might have had a gun in his pocket because he often carried a firearm. Kitchens was gone for a couple minutes. When he returned, he rushed to get in the car and said "Go."

Later, Brown was in jail when she received a letter from Kitchens in which he wrote about shooting at a California Highway Patrol (CHP) officer. Brown told a detective about the letter. She told the detective that Kitchens carried either a silver or black gun. At the time of trial, Brown was serving a prison term for the robbery at the Hanford Bargain Center. She received no benefit for testifying at Kitchen's trial.

John Tyler is a peace officer for the CHP. On the evening of May 9, 2010, he was on duty as a traffic officer in Hanford. He saw a maroon Dodge Caravan with its license plate partially covered such that the registration stickers were not visible. The officer initiated a traffic stop by turning on his overhead lights. The Caravan came to a stop on the shoulder of the roadway, and Tyler got out of his patrol car and walked to the driver's side of the Caravan.

As Tyler approached the driver's window and started to say, "good afternoon, sir," he could see the driver's face. The driver looked angry, and Tyler thought, "he's going to punch me." Tyler flinched and, at the same instant, heard a gunshot which came from the driver's window. The first gunshot disoriented the officer, and then he heard another shot, which "kind of woke [him] up." He stumbled back and returned fire. After Tyler "unloaded all of [his] rounds," the Caravan started to pull away. He felt his head and there was blood coming from his ear. At trial, Tyler identified Kitchens as the driver of the Caravan who shot at him.

Tyler got back in his patrol car and pursued the Caravan. He activated his car's lights and siren. Kitchens ran a red light and a stop sign and drove at speeds of at least 85 miles per hour. Driving on a highway, Kitchens passed cars on the right-hand shoulder and drove eastbound in a westbound lane, driving into oncoming traffic and forcing five cars to the side of the road. Kitchens turned off the highway and then drove into a dirt field where a cotton crop was growing. Kitchens drove through about half of the field and then got out of the Caravan and began running. Tyler followed Kitchens in his patrol car and then got out of his car and chased him on foot.

Tyler had his tactical rifle with him, and he ordered Kitchens to stop. Kitchens looked back and put his hands up. Tyler had his rifle pointed at Kitchens, and Kitchens said, "Don't shoot, don't shoot, please don't kill me." Another CHP officer, Joseph Machado, arrived at the scene and handcuffed Kitchens. Additional law enforcement officers arrived. At the Caravan, officers saw that the passenger side sliding door was open and they found two people, later identified as Miguel Acuna and Desiree Shoals, lying in the rows of cotton. They were also handcuffed and placed in CHP patrol cars. Several items that appeared to be drugs were found in the Caravan. A K–9 officer and his dog located a black revolver in the dirt about midway between the Caravan and where Kitchens was apprehended.

Tyler suffered burn marks on his face from gunpowder residue. He has also lost 50 percent of his hearing in his right ear and suffers from constant ringing in his ears.

Desiree Shoals knows Kitchens because they share a mutual friend, Miguel

Acuna. On May 9, 2010, Shoals and Acuna were passengers in Kitchen's burgundy-colored van. Acuna was in the front passenger's seat and Shoals was in the back. Shoals saw police lights flash in the rearview mirror, and Kitchens turned to Acuna and said, "Should I shoot him? Should I shoot him?" Kitchens pulled over, and the officer approached the van. Kitchens said, "What's the problem, Officer," and, as the officer began to speak, Kitchens reached his hand out the window and shot at the officer. Shoals saw fire by the officer's face. The officer returned fire, and the back window of the van shattered on Shoals.

According to Shoals, right after he fired a shot, Kitchens "instantly drove off." Kitchens said, "I thought I killed him, I thought I killed him." Acuna began throwing things out the window. He threw out cell phones, baggies—which Shoals believed contained drugs—and a gun. Shoals saw Kitchens was holding a handgun; it was black and the handle was brown.

Kitchens kept driving until they came to a cotton field, and a tire went flat. He then got out and ran. Shoals and Acuna got out of the van and went to the ground with their hands up.

Chris Fernandes, a Kings County Deputy Sheriff, investigated the scene where Kitchens was taken into custody. He identified the firearm found in the dirt as an RG 40, a type of revolver. The chamber of the revolver contained two live .38–caliber bullets and four spent casings, indicating that four bullets had been fired.

The field of cotton Kitchens drove through was damaged from the events of May 9, 2010. The farmer who planted the cotton crop lost about a bale and a half of cotton, which was worth approximately $1,000. The damage to the farmer's cotton crop was the basis for the charge of vandalism (count 9).

Robert Waggles, of the Kings County Sheriff's Department, was the lead investigator of the officer shooting. As part of his investigation, he monitored Kitchen's mail while Kitchens was held in jail. In his outgoing letters, Kitchens wrote about the shooting and the robbery. Kitchens wrote that he fired three shots at the CHP officer and he used hollow point bullets.

Waggles also searched the MySpace accounts of Kitchens and Acuna. He found photographs of Kitchens, Acuna, and Brown. One photograph from Kitchen's MySpace account showed a revolver that was similar in color, style, and shape to the revolver used in shooting Officer Tyler. The photo also showed a digital weighing scale and a stack of $100 and $50 bills fanned out on a desk. A photograph from Acuna's account showed Acuna and Kitchens together with Acuna holding what appeared to be a semiautomatic pistol. On cross-examination, Waggles agreed that the firearm in the photo could be a replica. Another photograph from Acuna's account showed Kitchens and Acuna sitting in a large red chair together. This photo was significant to Waggles because it appeared to depict a friendship between Kitchens and Acuna. Another photo from Acuna's account showed a revolver very similar to the one shown in the photograph from Kitchen's account, plus a cell phone, a stack of money, a glass jar filled with marijuana, and a plastic bindle containing something white.

*Defense*

Kitchens testified on his own behalf. He admitted that he robbed Gonzales and "it was just a stupid move." The weapon he used during the robbery was the same gun Acuna was holding in the MySpace photograph. Kitchens said the gun was "a

Hollywood prop" that did not fire. He knew the gun was inoperable because the slide did not slide back, the clip had a weight in it to make it feel solid, and there was a metal plug in the barrel; he said the metal plug was visible in the photograph. Kitchens did not have "a history of doing violent crimes" and he was "extremely scared" after the robbery. He admitted that he had committed "petty crimes, selling drugs, and petty thefts."

When he was pulled over by Officer Tyler, Kitchens was thinking that he wanted to die. He knew that he "had destroyed [his] life" when he committed the robbery. His intent was to "commit suicide by cop," referring to when a person fires a weapon at an officer, causing the officer to return fire and kill the person. On cross-examination, Kitchens claimed he had been suicidal ever since he saw himself on the news as a suspect in the robbery.

Kitchens stuck his upper body out the window and fired three rapid shots. He "put the gun parallel to [the officer's] head, not to impact it but on the side clearly parallel past his head." The officer flinched and the last shot gave him a powder burn. Kitchens testified, "I still had two more shots but I sat there and ... I braced" "[f]or death." FN5 He heard the back window shatter and the officer shot the rearview mirror. Then someone in the car yelled, "go." At that point, "adrenaline kicked in," and Kitchens "didn't want to die anymore." He denied saying, "I think I killed him," or anything about the officer. He was scared, and he did not want anyone to know he was trying to kill himself. He tried to commit suicide in 2003 by slicing his wrist. He denied throwing any drugs or cell phones out the window.

…FN5. On cross-examination, Kitchens explained that he bought the gun loaded, and he had fired one shot at the time he bought it. Therefore, there were five live cartridges in the gun when he was pulled over by Officer Tyler.
Kitchens testified that he did not intend to kill Officer Tyler. He said it would be hard for him to miss at pointblank range with three shots.

Kitchens admitted that, prior to the robbery, he was a street-level drug dealer and he sold cocaine and Ecstasy, but he denied any prior knowledge of the drugs found in his minivan. He suggested the drugs had been in Acuna's backpack. Acuna also sold drugs, but Kitchens and Acuna were not partners in drug sales. Kitchens admitted that he had guns to protect himself.

(LD 3 at 5-11).

**III.**

**STANDARD OF REVIEW**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.   28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Fresno County Superior Court, which is located within the venue of this Court.  28 U.S.C. § 2254(a); 28 U.S.C.

§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97-98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law."  Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72.  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)).  "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Id.  If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard.  Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en

banc).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF CLAIMS

### A.  Trial Court's Failure to *Sua Sponte* Instruct the Jury on Assault with a Deadly Weapon as a Lesser Included Offense to Assault with a Firearm

Petitioner argues that his due process rights were violated because the trial court failed to *sua sponte* instruct the jury on assault with a deadly weapon that is not a firearm in addition to assault with a semi-automatic firearm. Petitioner did not raise this claim on direct appeal, but raised it in his petition for writ of habeas corpus in the Kings County Superior Court, which rejected this claim along with the related ineffective assistance claim in a reasoned decision. (LD 7). Petitioner then raised the claim in habeas petitions to the Fifth Appellate District and the California Supreme Court. (LDs 8, 10). The Fifth Appellate District and California Supreme Court summarily denied the petitions. (LDs 9, 11). When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).

\\

1    1.  <u>Procedural default</u>

2    Respondent argues that Petitioner has procedurally defaulted this claim because he did

3    not raise his claim on direct appeal.  A federal court will not review a petitioner's claims if the

4    state court has denied relief of those claims pursuant to a state law that is independent of federal

5    law and adequate to support the judgment.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991);

6    <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  A state

7    court's refusal to hear the merits of a claim because of petitioner's failure to follow a state

8    procedural rule is considered a denial of relief on independent and adequate state grounds.

9    <u>Harris v. Reed</u>, 489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the

10   concerns of comity and federalism.  <u>Coleman</u>, 501 U.S. at 730-32.

11   However, there are limitations as to when a federal court should invoke procedural

12   default and refuse to evaluate the merits of a claim because the petitioner violated a state's

13   procedural rules.  Procedural default can only block a claim in federal court if the state court

14   "clearly and expressly states that its judgment rests on a state procedural bar."  <u>Harris</u>, 489 U.S.

15   at 263.  In addition, a federal court may only impose a procedural bar on claims if the procedural

16   rule that the state used to deny relief is "firmly established and regularly followed."  <u>O'Dell v.</u>

17   <u>Thompson</u>, 502 U.S. 995, 998 (1991); <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); <u>James v.</u>

18   <u>Kentucky</u>, 466 U.S. 341, 348-51 (1984).   The state procedural rule used must be clear,

19   consistently applied, and well-established at the time of the petitioner's purported default.  <u>Fields</u>

20   <u>v. Calderon</u>, 125 F.3d 757, 760 (9th Cir. 1997).

21   The Kings County Superior Court rejected the claim as follows:

22        Petitioner's notice of appeal was filed on April 24, 2012. The only
      issue raised on appeal was in connection with the consolidation of

23        Case No. 10CM0390 and 10CM1305. The issues raised in
      Grounds 1 through 3 should have been raised on appeal and do not

24        provide an independent basis for habeas corpus relief. (*In re*
      *Salomona* (1961) 193 Cal. App.2d 239, 241 [writ of habeas corpus

25        may not ordinarily be used as a substitute for an appeal or to retry
      issues of fact].) Accordingly, the court's review herein is limited to

26        Petitioner's claim of ineffective assistance by trial and appellate
      counsel (Grounds 4 and 5).

27

28   (LD 7 at 1-2).

1    Here, the Kings County Superior Court's cite to <u>In re Salomons</u> (1961) 193 Cal. App. 2d

2  239, 241, is a reference to the <u>Dixon</u> rule.  <u>See</u> <u>In re Dixon</u>, 41 Cal.2d 756, 759 (1953).  (D 7 at

3  1-2).  Under the <u>Dixon</u> rule, a petitioner cannot raise an issue in a post-appeal habeas petition

4  when that issue was not, but could have been, raised on appeal.  <u>Dixon</u>, 41 Cal. 2d at 759.

5  Courts have held the <u>Dixon</u> bar to be a state law ground that is independent of the federal

6  question and adequate to support it such that the claims are presumptively barred in federal court.

7  This Court finds the Kings County Superior Court expressly invoked a procedural rule in

8  California, commonly referred to as the <u>Dixon</u> rule, and Petitioner has procedurally defaulted

9  this claim.

10    Petitioner argues that procedural default does not apply because his claim is a

11  fundamental constitutional error.  If the court finds an independent and adequate state procedural

12  ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the

13  procedural default and actual prejudice, or demonstrate that the failure to consider the claims will

14  result in a fundamental miscarriage of justice."  <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-805 (9th Cir.

15  1993); <u>Coleman</u>, 501 U.S. at 750.  In this case, Petitioner has not shown that any external factor

16  prevented Petitioner from raising this claim on direct appeal.

17    Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will

18  occur if the claim is barred from federal review.  The miscarriage of justice inquiry is governed

19  by the standard set forth in <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).  <u>Murray</u> requires a habeas

20  petitioner to show that "a constitutional violation has probably resulted in the conviction of one

21  who is actually innocent." <u>Id.</u> at 496.  To satisfy <u>Murray's</u> "actual innocence" standard, a

22  petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

23  juror would have found him guilty beyond a reasonable doubt.  <u>Id</u>.  Here, Petitioner makes no

24  such showing of actual innocence.  Accordingly, Petitioner is procedurally barred from bringing

25  this claim and this claim must be denied.

26    Nevertheless, Petitioner's claim is without merit.

27  \\

28  \\

2. <u>Merits</u>

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.  In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA.  <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009) (quoting <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008)); <u>Panetti v. Quarterman</u>, 551 U.S. 930 (2007); <u>Carey v. Musladin</u>, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.  <u>Carey</u>, 549 U.S. 70; <u>Wright</u>, 552 U.S. at 126; <u>Moses</u>, 555 F.3d at 760.

The Court notes that Petitioner's claim is barred by the United States Supreme Court decision in <u>Teague v. Lane</u>, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because there is no clear rule of constitutional law establishing that a trial court must instruct on a lesser included offense in a noncapital case (not to mention an offense that, as here, is not truly a lesser included offense, as discussed below).  The United States Supreme Court has held that a trial court's failure to instruct the jury on a lesser included offense in a capital case would be a constitutional error if there was evidence to support the instruction.  <u>See Beck v. Alabama</u>, 447 U.S. 625, 638 (1980).  However, the Supreme Court did not decide whether a court in a non-capital case was required to give a lesser included offense instruction.  <u>See id</u>. at 638 n. 14.  The Ninth Circuit has declined to extend the holding in <u>Beck</u> to noncapital cases.  <u>See Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam).  Thus, even if the assault with a deadly weapon other than a firearm charge were a lesser-included offense in this case, there is no clear rule

1   requiring the trial court to advise the jury about it.

2       However, a criminal defendant is separately entitled to have the trial court instruct the jury

3   on his or her theory of defense if the defendant requests such an instruction at trial, provided the

4   theory is supported by law and has some foundation in the evidence.  Mathews v. United States,

5   485 U.S. 58, 63, 108 S.Ct.883, 99 L.Ed.2d 54 (1988); Bradley v. Duncan, 315 F.3d 1092, 1098

6   (9th Cir. 2002), cert. denied, 540 U.S. 963, 124 S.Ct. 412, 157 L.Ed.2d 305 (2003).  Thus, to the

7   extent Petitioner argues that the trial court denied him due process of law by failing to instruct

8   the jury on his theory of defense, his claim is not barred by Teague since the Supreme Court has

9   recognized that defendants must be provided a meaningful opportunity to present a complete

10  defense.  See Bradley, 315 F.3d at 1098–1101.  Although it is worth noting that Petitioner did

11  not request that charge at trial, which is why ineffective assistance of counsel is a necessary

12  element of Petitioner's request for relief here.

13      In its decision, the Kings County Superior Court discussed the merits of Petitioner's

14  claim concerning the trial court's failure to instruct the jury on the charge of assault with a

15  deadly weapon other than a firearm at the same time that it addressed Petitioner's claim that his

16  counsel was ineffective for failing to raise such an issue during trial.  The Kings County Superior

17  Court held that:

18          Grounds 1 and 4 focus upon the court's alleged lack of instruction
            regarding charge of assault with a deadly weapon other than a
19          firearm.  Ground 1 asserts error by the court in not instructing the
            jury, and Ground 4 alleges error in counsel's failure to raise such
20          issue during trial.  Petitioner was found guilty of a violation of
            California Penal Code Section 245, subdivision (b) [assault with a
21          semiautomatic firearm] in Count 11 of the Amended Information.

22          A trial court is required to instruct sua sponte on all lesser included
            offenses when the evidence warrants such instruction. *People v.*
23          *Breverman* (1998) 19 Cal.4th 142, 148-149.)  California Penal
            Code Section 245, subdivision (a)(1) [firearm assault] is a lesser-
24          included offense of Section 245, subdivision (b).  (People v.
            Martinez (2008) 208 Cal. App. 4th 197, 199.)  California Penal
25          Code Section 245, subdivision (a)(2), is not.[3]  Furthermore, in this

26  _____
    [3]This Court notes that subdivision (a)(1) is the section for assault with a deadly weapon other than a firearm and
27  subdivision (a)(2) is assault with a firearm.  As detailed below, assault with a firearm is a lesser included of assault
    with a semiautomatic firearm, because the assault with a semiautomatic firearm includes all of the elements of
    assault with a firearm.  However, assault with a deadly weapon other than a firearm is not a lesser included of
28  assault with a semiautomatic firearm, because assault with a semiautomatic firearm does not include all of the

case an instruction on Section 245, subdivision (a)(2) [weapon assault] was not required because: (1) Other than threatening to "shoot" Loretta Rico, Petitioner did no act which would directly and probably result in the application of force to a person, and (2) he either utilized a real firearm or a non-shootable instrument that was not a firearm. If Petitioner was shown under these circumstances to have utilized a non-shootable instrument that was not a firearm, he would have been found not guilty of assault as against Loretta Rico because a simple threat of injury from pointing an unloaded firearm, or a fake firearm, does not constitute an assault. (See, *People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3; *People v. Valdez* (1985) 175 Cal. App. 3d 103, 111.)

(LD 7 at 2-3).

In California, trial courts have a *sua sponte* duty to instruct the jury on a lesser included offense if there is "evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." People v. Shockley, 58 Cal.4th 400, 403, 165 Cal.Rptr.3d 497, 314 P.3d 798 (2013), *as modified on denial of reh'g,* (Feb. 26, 2014). A court may employ the elements test or the accusatory pleading test to determine if an offense is lesser and necessarily included in another offense. See Shockley, 58 Cal.4th at 404. The California Supreme Court has held that:

> Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.

Shockley, 58 Cal.4th at 404 (quoting People v. Reed (2006) 38 Cal.4th 1224, 1227-1228, 45 Cal.Rptr.3d 353, 137 P.3d 184).

Petitioner argues that the jury should have been instructed with subsection (a)(1) of Section 245 of the Cal. Penal Code, assault with a deadly weapon other than a firearm, on the ground it is a lesser included offense of subsection (b) of Section 245. Cal. Penal Code § 245(a)(1) provides that:

> Any person who commits an assault upon the person of another

---

elements of assault with a deadly weapon other than a firearm. Therefore, it appears that the Kings County Superior Court mistakenly cited the wrong section and meant to say that subdivision (a)(2) of Section 245 of the California Penal Code is a lesser-included offense of subdivision (b), but subdivision (a)(1) is not a lesser-included offense.

> with a deadly weapon or instrument other than a firearm shall be
> punished by imprisonment in the state prison for two, three, or four
> years, or in a county jail for not exceeding one year, or by a fine
> not exceeding ten thousand dollars ($10,000), or by both the fine
> and imprisonment.

Cal. Penal Code § 245(b) provides that, "Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years."

The Court agrees with the Kings County Superior Court that Cal. Penal Code § 245(a)(1) [assault with a deadly weapon other than a firearm] is *not* a lesser included offense of Cal. Penal Code § 245(b) [assault with a firearm].  Applying the <u>Shockley</u> test, the statutory elements of the greater offense, i.e. assault with a semiautomatic firearm, do not include all of the elements of the lesser offense, i.e. assault with a deadly weapon other than firearm.  Specifically, the greater offense, assault with a semiautomatic firearm, does not include the element of use of "a deadly weapon or instrument that is not a firearm."  Put another way, one commits assault with a semiautomatic firearm without committing assault with a deadly weapon or instrument other than a firearm.  Therefore, Cal. Penal Code § 245(a)(1) is not a lesser included offense of Cal. Penal Code § 245(b).

Furthermore, Defendant's theory of the case--that he did not have a firearm that was capable of shooting a projectile--would not support a guilty verdict for assault with a deadly weapon other than a firearm.  The issue is not whether Petitioner used some other weapon other than a semi-automatic firearm.  Rather Petitioner's theory was that the semi-automatic firearm was unable to shoot.  If the jury believed Petitioner, they should have found him not guilty of Cal. Penal Code § 245(b) for failure of proof of the element of having "the present ability" to commit violent injury.  Adding an instruction about assault with some other weapon was not needed to present the jury with the appropriate question for the jury consistent with Petitioner's defense.  Accordingly, Petitioner's first claim must be denied.

**B.  Sufficiency of the Evidence for the Firearm Charge and Enhancements**

Petitioner also argues that there was insufficient evidence to support the firearm charge in count 11 and the firearm enhancements in counts 10, 11, and 12.  Respondent argues that this

1   claim was procedurally defaulted because Petitioner did not raise it in his direct appeal.

2   Respondent also argues that Petitioner has failed to show that no rational trier of fact could have

3   concluded that he used a real firearm during the robbery.

4           1.  Procedural default

5           This claim was presented in a state habeas petition to the Kings County Superior Court

6   and it was denied in a reasoned decision.  Petitioner then presented this claim in subsequent

7   petitions for habeas corpus in the California Court of Appeal, Fifth Appellate District and the

8   California Supreme Court.  The Fifth Appellate District and the California Supreme Court

9   summarily denied the petitions.  Federal courts review the last reasoned state court opinion.  Ylst

10  v. Nunnemaker, 501 U.S. 979, 803 (1991).  Therefore, the Court must review the opinion of the

11  Kings County Superior Court, which stated that:

12              Petitioner's notice of appeal was filed on April 24, 2012. The only
                issue raised on appeal was in connection with the consolidation of
13              Case No. 10CM0390 and 10CM1305. The issues raised in
                Grounds 1 through 3 should have been raised on appeal and do not
14              provide an independent basis for habeas corpus relief. (In re
                Salomona (1961) 193 Cal. App.2d 239, 241 [writ of habeas corpus
15              may not ordinarily be used as a substitute for an appeal or to retry
                issues of fact].) Accordingly, the court's review herein is limited to
16              Petitioner's claim of ineffective assistance by trial and appellate
                counsel (Grounds 4 and 5).
17
18  (LD 7 at 1-2).

19          As discussed above, the Kings County Superior Court noted that the claim was

20  procedurally defaulted because it was not raised on direct appeal and cited In re Salomons (1961)

21  193 Cal. App. 2d 239, 241.  (LD 7 at 1-2).  The Superior Court's denial is a reference to the

22  Dixon rule.  See In re Dixon, 41 Cal.2d at 759.  This Court finds the Kings County Superior

23  Court expressly invoked a procedural rule in California, commonly referred to as the Dixon rule,

24  and Petitioner has procedurally defaulted this claim.  However, this claim may be raised on

25  federal habeas review if a petitioner can meet his or her burden under Jackson v. Virginia, 443

26  U.S. 307, 319 (1979), which provides that when viewing the evidence and the inferences to be

27  drawn from it in the light most favorable to the prosecution, any rational trier of fact could find

28  the essential elements of the crime beyond a reasonable doubt.  Therefore, the Court also reviews

1    the merits of the claim.

2         2.   Merits

3         When the Kings County Superior Court rejected Petitioner's second claim in the context

4    of the ineffective assistance of counsel claim, it stated as follows:

5              In regards to Ground 2, Petitioner's dissatisfaction is not actually
               with the People but with the manner in which the jury weighed the
6              evidence before it.  Based upon a review of the record before this
               court, there appears to have been sufficient evidence of Petitioner's
7              use of a real firearm to support his conviction.  As a result, this
               court finds no error and/or prejudice in appellate counsel's failure
8              to address such issue on appeal.

9    (LD 7 at 3).

10        Petitioner's second claim for relief is an insufficiency of the evidence claim.  As stated

11   above, the United States Supreme Court has held that when reviewing an insufficiency of the

12   evidence claim, a court must determine whether, viewing the evidence and the inferences to be

13   drawn from it in the light most favorable to the prosecution, any rational trier of fact could find

14   the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319.

15   Sufficiency claims are judged by the elements defined by state law.  Id. at 324 n.16.  On federal

16   habeas review, AEDPA requires an additional layer of deference to the state decision.  Juan H. v.

17   Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

18        The jury found Petitioner guilty of robbery in count ten and found true the firearm

19   enhancements that Petitioner personally used a semiautomatic handgun in violation of Cal. Pen.

20   Code §§ 12022.5(a) and 12022.53(b).  In count eleven, the jury found Petitioner guilty of assault

21   with a semi-automatic firearm, in violation of Cal. Pen. Code § 245, and found that Petitioner

22   violated Cal. Pen. Code § 12022.5(a).  In count twelve, Petitioner was found guilty of unlawful

23   possession of a firearm by a felon in violation of Cal. Pen. Code §12021(a)(1).  Petitioner argues

24   that there was insufficient evidence that the firearm was real, and thus a necessary element was

25   missing from each of these convicted offenses.[4]

26   ───────────────
     [4] Cal. Penal Code §245(b) provides that, "Any person who commits an assault upon the person of another with a
27   semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years."  Cal. Pen.
     Code § 12022.5(a) provides that: "Except as provided in subdivision (b), any person who personally uses a firearm
     in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of
28   imprisonment  for 3, 4, or 10 years, unless use of a firearm is an element of that offense."  Cal. Pen. Code §

                                              17

1    In order to secure a violation of unlawful possession of a firearm by a felon the

2 prosecutor must show that the defendant had a prior felony conviction, was in possession of a

3 firearm, and knew that he possessed a firearm.  People v. Jeffers, 41 Cal.App.4th 917, 922, 49

4 Cal.Rptr.2d 86 (1996).  The prosecution must also prove that the firearm was designed to be shot

5 and appeared capable of being fired.  People v. Hamilton, 61 Cal.App.4th 149, 153, 71

6 Cal.Rptr.2d 359 (1998).  The only sufficiency of the evidence issue is whether Petitioner used a

7 firearm within the definition of the statutes.

8    For purposes of these sections, a " 'firearm' means any device, designed to be used as a

9 weapon, from which is expelled through a barrel, a projectile by the force of any explosion or

10 other form of combustion." Cal. Penal Code § 12001, subd. (b). Therefore, California courts

11 have held that "toy guns obviously do not qualify as a 'firearm,' nor do pellet guns or BB guns

12 because, instead of explosion or other combustion, they use the force of air pressure, gas

13 pressure, or spring action to expel a projectile." See People v. Monjaras, 164 Cal.App.4th 1432,

14 1435, 79 Cal.Rptr.3d 926, 928 (2008).

15    Here, the evidence in the record was that Petitioner pointed a gun at Ms. Rico and said

16 something to the effect of "I'll shoot you" and called her a bitch.  A defendant's statements and

17 behavior while making an armed threat against a victim can support a jury finding that the

18 weapon was loaded.  People v. Rodriguez, 20 Cal.4th at 12-13.  The trier of fact could have

19 concluded from Petitioner's own behavior of affirmatively using the weapon to threaten the

20 victim that the weapon was not a fake because, during the incident, Petitioner acted as though the

21 gun was a real firearm capable of being fired.  In other words, Petitioner acted at the time like he

22 had a weapon that could shoot.  Therefore, there is evidence in the record which reasonably

23 supports that the gun was a weapon that could shoot beyond a reasonable doubt.

24    It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and

25 draw reasonable inferences from the facts, and thus that it must be assumed that the trier resolved

26

27 12022.53(b) provides that: "Notwithstanding any other provision of law, any person who, in the commission of a
felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive
term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this

28 enhancement to apply."  Robbery is specified in § 12022.53(a)(4) as a section that § 12022.53 applies to.

1  all conflicts in a manner that supports the verdict.  <u>Jackson</u>, 443 U.S. at 319, 326.   Thus,

2  Petitioner has not shown that there was insufficient evidence for the firearm enhancements in

3  count ten, the firearm charge and enhancement in count eleven, and the firearm charge in count

4  twelve, and this claim must be denied.

5          **C. Ineffective Assistance of Counsel**

6          1.   <u>Standard</u>

7        The clearly established federal law governing ineffective assistance of counsel claims is

8  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In a petition for writ of habeas corpus alleging

9  ineffective assistance of counsel, the court must consider two factors.  <u>Strickland</u>, 466 U.S. at

10  687. First, the petitioner must show that counsel's performance was deficient, requiring a

11  showing that counsel made errors so serious that he or she was not functioning as the "counsel"

12  guaranteed by the Sixth Amendment.  <u>Id</u>. at 687.   The petitioner must show that counsel's

13  representation fell below an objective standard of reasonableness, and must identify counsel's

14  alleged acts or omissions that were not the result of reasonable professional judgment

15  considering the circumstances.  <u>Richter</u>, 562 U.S. at 105 ("The question is whether an attorney's

16  representation amounted to incompetence under "prevailing professional norms," not whether it

17  deviated from best practices or most common custom.) (citing <u>Strickland</u>, 466 U.S. at 688).

18  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong

19  presumption that counsel's conduct falls within the wide range of reasonable professional

20  assistance.  <u>Strickland</u>, 466 U.S. at 687; <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994).

21  A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to

22  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

23  counsel's perspective at that time."  <u>Strickland</u>, 466 U.S. at 669.

24        Second, the petitioner must show that there is a reasonable probability that, but for

25  counsel's unprofessional errors, the result would have been different.  It is not enough "'to show

26  that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Richter</u>, 131

27  S.Ct. at 787 (internal citation omitted).  A reviewing court may review the prejudice prong first.

28  <u>See</u> <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697)

1    (holding that a court may dispose of an ineffective assistance of counsel claim on the ground of

2    lack of sufficient prejudice before determining whether counsel's performance was deficient).

3         In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown

4    not only that the state court determination was erroneous, but also that it was objectively

5    unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  Moreover, because the Strickland

6    standard is a general standard, a state court has even more latitude to reasonably determine that a

7    defendant has not satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)

8    ("[E]valuating whether a rule application was unreasonable requires considering the rule's

9    specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

10   case-by-case determinations.").

11        2.  Trial counsel's failure to adequately prepare for trial

12        Petitioner argues that his trial counsel did not provide effective assistance of counsel

13   because his counsel did not inspect the prosecution's photographs of the gun prior to trial.

14   Petitioner raised this claim in his habeas petition in the Kings County Superior Court.  The

15   Superior Court denied this claim in a reasoned decision, which was the last reasoned decision by

16   the state courts.  The Superior Court stated:

17            Ground 3 claims that trial counsel failed to prepare for trial by
             accessing photo evidence provided to him by the People prior to
18           trial. According to Petitioner, the disks contained a large number of
             photographs from his and Miguel Acuna's social media pages
19           which he claims were used to blindside him during his trial
             testimony. Petitioner also asserts that he would have "produced"
20           the replica gun into evidence had he known that a picture of the
             same would be utilized by the Prosecution to show that he had
21           access to a semiautomatic firearm for purposes of Counts 10, 11,
             and 12 of the Amended Information.
22
             Although defense counsel's alleged admission of failure to inspect
23           the photos prior to trial may reflect a failure to meet an objectively
             reasonable standard of professional conduct, his deficient
24           performance was not prejudicial. Extensive testimony was
             provided at trial by Investigator Paul Waggle confirming that he
25           was not able to identify whether the "gun" was an actual or replica
             pistol. (11 RT 1497.) Petitioner testified at trial that the weapon he
26           used to strike Ms. Gonzales was not capable of firing real bullets.
             (12 RT 1852, 1856.) Despite such evidence, the jury found
27           Petitioner guilty of Counts 10, 11 and 12 of the Amended
             Information and the personal use of a semi-automatic handgun
28           within the meaning of California Penal Code Sections 12022.5,

1   subdivision (a)(1) and 12022.53(b)-(c). The jury's determination
    appears to have been largely based upon Petitioner's own threat to
2   shoot Ms. Rico during the incident. (*See, People v. Rodriguez,
    supra*, 20 Cal.4th 1, 13 [a defendant's own words and conduct may
3   support an inference the weapon was loaded].)

4   In addition, the court will not second-guess trial counsel's
    reasonable tactical decisions. (*People v. Kelly* (1992) 1 Cal.4th
5   495, 520.) Even debatable trial tactics do not constitute ineffective
    assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876,
6   928.) Effective assistance is not perfect assistance. In this case,
    Petitioner and his trial counsel were fully aware of the intended
7   not-a-firearm defense prior to trial. Accordingly, it is difficult to
    discern how early review/disclosure of pictures of the gun would
8   have changed or altered any perceived need to have the actual
    weapon available for trial. Instead, it is clear that counsel felt that
9   given the inability of Investigator Waggle to positively identify the
    weapon "as real" that it was better to proceed on a theory of lack of
10  evidence of the charges asserted, than to provide the People with
    an opportunity to distinguish the weapon in the picture from any
11  weapon offered into evidence by Petitioner.

12  (LD 7 at 3-4).

13      This Court agrees and holds that Petitioner is not entitled to relief because he has not

14  shown that he suffered any prejudice from his trial counsel's failure to inspect photographs from

15  the prosecution before trial.  Petitioner argues that he would have produced a replica gun into

16  evidence if his trial counsel had inspected the photograph depicting the gun, which the

17  prosecution said it was going to introduce into evidence.  But Petitioner and his trial counsel

18  knew even without the photographs that Petitioner was accused of using a real firearm.  After all,

19  the crimes at issue included assault with a semiautomatic firearm.  In other words, it was not the

20  photographs that put the use of a real gun at issue.  Petitioner may not have produced a replica

21  gun as a tactical decision or because it does not exist.  What is known is that, even facing trial on

22  a charge of assault with a semiautomatic firearm, Petitioner never produced a replica gun in his

23  defense.  Thus, Petitioner has not shown that the viewing of the photographs would have

24  changed his defense.

25      In sum, Petitioner has not shown that he suffered any prejudice from his trial counsel's

26  failure to view the prosecution's photograph of the gun while preparing for trial and that the state

27  court's application of Strickland was objectively unreasonable.  Thus, this claim must be denied.

28  \\

3.  Trial counsel's failure to object to the lack of a jury instruction on assault with a deadly weapon

Petitioner argues that his rights were violated when his trial counsel failed to object to the trial court's failure to instruct the jury on assault with a deadly weapon.   In the last reasoned decision, the Kings County Superior Court held that:

> Grounds 1 and 4 focus upon the court's alleged lack of instruction regarding charge of assault with a deadly weapon other than a firearm.  Ground 1 asserts error by the court in not instructing the jury, and Ground 4 alleges error in counsel's failure to raise such issue during trial.  Petitioner was found guilty of a violation of California Penal Code Section 245, subdivision (b) [assault with a semiautomatic firearm] in Count 11 of the Amended Information.
>
> A trial court is required to instruct sua sponte on all lesser included offenses when the evidence warrants such instruction. *People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) California Penal Code Section 245, subdivision (a)(1) [firearm assault] is a lesser-included offense of Section 245, subdivision (b). (People v. Martinez (2008) 208 Cal. App. 4th 197, 199.) California Penal Code Section 245, subdivision (a)(2), is not. Furthermore, in this case an instruction on Section 245, subdivision (a)(2) [weapon assault] was not required because: (1) Other than threatening to "shoot" Loretta Rico, Petitioner did no act which would directly and probably result in the application of force to a person, and (2) he either utilized a real firearm or a non-shootable instrument that was not a firearm. If Petitioner was shown under these circumstances to have utilized a non-shootable instrument that was not a firearm, he would have been found not guilty of assault as against Loretta Rico because a simple threat of injury from pointing an unloaded firearm, or a fake firearm, does not constitute an assault. (See, *People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3; *People v. Valdez* (1985) 175 Cal. App. 3d 103, 111.)

(LD 7 at 2-3).

As discussed above in Point IV.A., Petitioner was not legally entitled to an instruction on assault with a deadly weapon other than a firearm, Cal. Penal Code § 245(a)(1).  As described above, an element of Cal. Penal Code § 245(a)(1)--that the assault was committed with a deadly weapon or instrument other than a firearm--is not included within the elements of Cal. Penal Code §245(b), and thus it is not truly a lesser-included offense.   Moreover, the requested instruction is not in fact consistent with Petitioner's defense of using a replica gun because the instruction still contains an element of using a deadly weapon, which Petitioner claims not to

1   have done.  Therefore, Petitioner has not satisfied <u>Strickland</u> by showing that a failure to request

2   that instruction was sufficiently ineffective assistance of counsel, and this claim must be denied.

3        4.  <u>Appellate counsel's ineffectiveness</u>

4        Petitioner argues that his appellate counsel should have raised on direct appeal the issues

5   that Petitioner raises in the instant federal habeas petition.  In his federal habeas petition,

6   Petitioner raises an ineffective assistance of trial counsel claim.  That claim was appropriately

7   raised in a state habeas petition by Petitioner, because claims regarding the assistance of counsel

8   are better suited for habeas petitions instead of direct appeal.  Therefore, it was reasonable for

9   Petitioner's appellate counsel not to raise any claims concerning ineffective assistance of trial

10  counsel.

11       As discussed above, Petitioner's claims are without merit.  Appellate counsel does not

12  have to raise "every nonfrivolous claim, but rather may select from among them in order to

13  maximize the likelihood of success on appeal."  <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000).

14  Therefore, it was reasonable for Petitioner's appellate counsel not to include on direct appeal the

15  claims that Petitioner raises in his federal habeas petition.  Thus, Petitioner has not shown that

16  the state court's application of <u>Strickland</u> was objectively unreasonable and this claim must be

17  denied.

18                              **V.**

19                     **RECOMMENDATION**

20       Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

21  corpus be DENIED and the Clerk of the Court be directed to close the case.

22       This Findings and Recommendation is submitted to the assigned United States District

23  Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

24  Rules of Practice for the United States District Court, Eastern District of California.  Within

25  thirty (30) days after service of the Findings and Recommendation, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

27  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections

28  shall be served and filed within fourteen (14) days after service of the objections.  The assigned

United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 28, 2015**              /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE